IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EDIBLE ARRANGEMENTS, LLC,

   Plaintiff,

     v.

CHEIKH MBOUP, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-1158-TWT

**OPINION AND ORDER**

This is a breach of contract and fraud action. It is before the Court on the Plaintiff Edible Arrangements, LLC's Motion to Dismiss the Defendant Cheikh Mboup's Counterclaims [Doc. 24]. For the reasons set forth below, the Plaintiff's Motion to Dismiss Counterclaims [Doc. 24] is GRANTED in part and DENIED in part.

### I.  Background[1]

This case arises from allegations that the Defendant Cheikh Mboup, the former President and Chief Operating Officer of the Plaintiff Edible Arrangements, LLC ("Edible"), committed fraud and violated the terms of his employment contract by diverting funds to his company, the Defendant E.A. International, LLC, through a kickback scheme with the Defendant Active Media Services, Inc. ("Active Media"). (Compl., at 1). Mboup originally worked

---

[1] The Court accepts the facts as alleged in the Counterclaims as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

for Edible from 2015 to 2018, and he returned to work for Edible in July 2019 after negotiating an employment agreement with Edible's Chief Executive Officer, Tariq Farid, that contemplated certain permitted business activities on Mboup's part. (Countercls. ¶¶ 2–4, 6). Mboup's employment agreement included a "Competitive Ventures" provision which reads as follows:

> During your employment with Edible Arrangements, you may engage in or possess an interest in other business ventures, and Edible Arrangements shall have no rights by virtue of your employment to any of the income or profits derived therefrom, and the pursuit of any such venture, even if competitive with our business of the Company, shall not be deemed wrongful or improper. You shall not be obligated to disclose or present any particular opportunity to Edible Arrangements even if that opportunity is of a character that, if disclosed or presented to us, could be taken by us. You shall not, however, be permitted to use trade secrets or confidential or proprietary information of Edible Arrangements for any such independent business venture or opportunity.

(*Id.* ¶ 5; Doc 15-1, at 1–2).

In December 2019, Mboup created E.A. International LLC after discussing the concept of the company with Farid. (Countercls. ¶¶ 7–8). E.A. International LLC's first business transaction involved Active Media and resulted in a $150,000 payment to Farid. (*Id.* ¶ 9). Mboup claims that Farid was aware of E.A. International LLC's business activities and condoned them through the terms of Mboup's employment agreement. When Mboup resigned from Edible in August 2022, he claims that Farid sent a letter to Edible's franchisees that falsely stated he was on medical leave. (*Id.* ¶¶ 16–17).

Edible filed this action on March 17, 2023, asserting nine counts in total against the Defendants, and Mboup answered and counterclaimed on April 26, bringing claims against Edible for breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference with contractual and business relations. Edible now moves to dismiss all three counterclaims against it for failure to state a claim.

## II.     Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only

3

give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

In support of its Motion to Dismiss Counterclaims, Edible argues that Mboup's claims for breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference should all be dismissed for failing to state a plausible claim. (Br. in Supp. of Pl.'s Mot. to Dismiss Countercls., at 4–17). The Court considers Edible's arguments as to each claim, and Mboup's responses thereto, in turn.

### A.   Breach of Contract (Count I)

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502 (2010) (citation omitted). "A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." *UWork.com, Inc. v. Paragon Techs., Inc.*, 321 Ga. App. 584, 590 (2013).

Regarding Mboup's breach of contract claim, Edible argues that Mboup fails to plausibly allege any breach or resulting damages to support his claim. (Br. in Supp. of Pl.'s Mot. to Dismiss Countercls., at 12–17). Mboup contends

that Edible has clearly breached the Competitive Ventures provision of his employment agreement by claiming rights to income and profits derived by his business ventures through E.A. International LLC. (Resp. Br. in Opp'n of Pl.'s Mot. to Dismiss Countercls., at 7–8). Mboup sets forth several theories in support of his allegation that Edible breached his employment contract, including by (1) "attempting to prevent Mr. Mboup from engaging in certain business ventures and opportunities that are expressly permitted by the employment agreement, [2] attempting to deprive Mr. Mboup of funds derived from such business ventures and opportunities," and (3) by filing this lawsuit. (Countercls. ¶¶ 22, 24).

Beginning with the first and second theories, Edible claims that Mboup fails to allege the existence of any potential or actual business opportunity, let alone one that it prevented him from engaging in. (Br. in Supp. of Pl.'s Mot. to Dismiss Countercls., at 13). Edible contends that Mboup's relationship with Active Media does not govern this issue because Mboup fails to allege any continuation of the business relationship after his resignation from Edible in 2022 or that Edible prevented him from doing business with Active Media. (*Id.* at 14). Edible also disputes Mboup's "deprivation of funds" allegation as lacking plausibility because he fails to allege any facts supporting his statement that those funds came from a permissible business venture; rather, Edible contends that Mboup paid those funds to his company instead of the proper one. (*Id.* at 14–15). Finally, regarding its third theory of breach, Edible

claims that its filing of this lawsuit does not amount to a plausible breach because the employment agreement does not prevent Edible from suing to recover the payments from Active Media to which it claims Mboup was not entitled. (*Id.* at 15).

In response, Mboup argues that he plausibly alleges Edible breached the employment agreement by repudiating and renouncing its obligation under the contract to not claim a right to the income and profits that Mboup derived from business opportunities he identified in facilitating media purchases for Edible. (Resp. Br. in Opp'n of Pl.'s Mot. to Dismiss Countercls., at 7–8). Mboup also argues that Edible's attempts to deprive him of those profits and its accusations of fraud and theft against him all amount to repudiation of their employment agreement. (*Id.* at 8). In reply, Edible emphasizes that Mboup declines to explain why he has a right to the $2.5 million paid to his company by Active Media and ignores that those contracts contemplate payments to Edible Arrangements International, *Inc.*, rather than E.A. International LLC. (Reply Br. in Supp. of Pl.'s Mot. to Dismiss Countercls., at 9–10). Edible notes that "the mere fact that he made money through his fraudulent scheme cannot insulate him from liability for that fraud." (*Id.* at 10).

Construing the Counterclaims' allegations in the light most favorable to Mboup, the Court concludes that he has plausibly stated a claim for breach of contract against Edible. The employment agreement specifically provides that Edible "shall have no rights by virtue of [Mboup's] employment to any of the

income or profits derived" from his other business ventures, and if Edible indeed repudiated or renounced this obligation under the agreement as Mboup alleges, such allegations could potentially support a plausible claim for breach. (Doc. 15-1 at 2).

Edible takes issue with Mboup's alleged failure to identify a specific business venture aside from its contracts with Active Media that could support his breach of contract claim. But Mboup need not have alleged any business venture other than the one with Active Media to support his claim. (Countercls. ¶¶ 7–12). If Edible turns out to have justifiably repudiated the terms of the employment agreement by seeking to recover the funds fraudulently paid to E.A. International, LLC, then Mboup's breach of contract claim premised upon repudiation may, at that point, necessarily fail. But at the motion to dismiss stage, the Court declines to make such a determination. Edible also claims that Mboup fails to plausibly allege damages to support his breach of contract claim. (Br. in Supp. of Pl.'s Mot. to Dismiss Countercls., at 15–17). But Mboup's alleged reputational harm and potential lost customers are sufficient damages to state a plausible claim for breach. (Countercls. ¶¶ 9, 25). Accordingly, Edible is not entitled to dismissal of Mboup's breach of contract counterclaim.

### B. Breach of the Covenant of Good Faith and Fair Dealing (Count II)

Edible argues that Mboup's claim for breach of the covenant of good faith and fair dealing fails as a matter of law because it cannot provide an independent basis for liability. (Br. in Supp. of Pl.'s Mot. to Dismiss

7

Countercls., at 17). Having found that the Mboup properly states his breach of contract counterclaim, Edible's argument here fails, and Mboup properly states his breach of implied covenant claim.

### C. Tortious Interference with Contractual/Business Relations (Count III)

"Under Georgia law, tortious interference claims, whether asserting interference with contractual relations, business relations, or potential business relations, share certain common essential elements:"

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Atlanta Fiberglass USA, LLC v. KPI, Co.*, 911 F. Supp. 2d 1247, 1256 (N.D. Ga. 2012) (quotation marks, alterations, and citation omitted). "[F]or a defendant to be liable for tortious interference with contractual relations, the defendant must be a stranger to both the contract *and* the business relationship giving rise to and underpinning the contract." *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 609 (1998). "One is not a stranger to the contract just because one is not a party to the contract. Parties to an interwoven contractual arrangement and parties that have a direct economic interest in or would benefit from a contract with which they are alleged to have interfered are not strangers to that contract or relationship." *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1344 (11th Cir. 2017) (quotation marks and

citations omitted).

Mboup alleges that Edible tortiously interfered with his contractual and business relations by acting "improperly and without privilege when it told its franchisees that Mr. Mboup had taken a 'medical leave' and made other statements to franchisees to (1) suggest that Mr. Mboup had committed illegal or fraudulent acts; and/or (2) to dissuade the franchisees from doing further business with E.A. International LLC." (Countercls. ¶ 33). In support of dismissal of Mboup's tortious interference claim, Edible argues, among other reasons, that the stranger doctrine bars Mboup from basing his claim on any contract or relationship with Edible. (Br. in Supp. of Pl.'s Mot. to Dismiss Countercls., at 6–9).

The Court concludes that Mboup fails to plead a plausible tortious interference claim because Edible was not a stranger to the purported potential contracts or business relationships. Specifically, the only allegedly wrongful conduct pleaded here by Mboup is Edible's statement to its franchisees regarding his medical leave and his alleged fraudulent acts. Edible clearly maintains a direct economic interest in any potential business relationships between its franchisees and Mboup—the relationships with which Edible is alleged to have interfered. And with such a direct economic interest between Edible and its franchisees, Mboup has failed to plausibly plead that Edible was a stranger to the contractual or business relations at issue. *C.f. Perry v. Unum Life Ins. Co. of Am.*, 353 F. Supp. 2d 1237, 1241 (N.D. Ga. 2005). Therefore, his

tortious interference claim fails and should be dismissed.[2]

## IV. Conclusion

For the foregoing reasons, the Plaintiff's Motion to Dismiss the Defendant Mboup's Counterclaims [Doc. 24] is GRANTED in part and DENIED in part. It is GRANTED as to Count III (Tortious Interference), and it is DENIED as to Count I (Breach of Contract) and Count II (Breach of the Covenant of Good Faith and Fair Dealing).

SO ORDERED, this ___19th___ day of September, 2023.

*[signature]*
THOMAS W. THRASH, JR.
United States District Judge

---

[2] Mboup requests leave to amend his Counterclaims if the Court grants any part of Edible's Motion to Dismiss. (Resp. Br. in Opp'n of Pl.'s Mot. to Dismiss Countercls., at 14 n.1). But Mboup's request, imbedded within a footnote to his opposition brief, is not the appropriate avenue for such a request. *See* Fed. R. Civ. P. 7(b)(1); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir.1999) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."). His "motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir.1999).