IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EDIBLE ARRANGEMENTS, LLC,

     Plaintiff,

        v.

CHEIKH MBOUP, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-1158-TWT

## OPINION AND ORDER

This is a fraud and breach of contract case. It is before the Court on
Plaintiff Edible Arrangements, LLC ("Edible") Motion for Sanctions [1]
[Doc. 188], Motion to Strike [Doc. 191], and Motion for Summary Judgment
[Doc. 195]. For the reasons set forth below, the Court GRANTS in part and
DENIES in part Plaintiff Edible's Motion for Sanctions [Doc. 188], GRANTS
the Motion to Strike [Doc. 191], and GRANTS the Motion for Summary
Judgment [Doc. 195].

### I.    Background[2]

Plaintiff Edible Arrangements, LLC alleges that Defendants Cheikh
Mboup and E.A. International LLC ("EAI") embezzled millions of dollars from

---

[1] Edible formally styles this motion as a "Motion to Strike and for
Sanctions Against Defendants for Their Bad Faith Discovery Conduct."

[2] The operative facts on the Motion for Summary Judgment are taken
from the parties' Statements of Undisputed Material Facts and the responses
thereto. The Court will deem the parties' factual assertions, where supported
by evidentiary citations, admitted unless the respondent makes a proper
objection under Local Rule 56.1(B).

Edible while Mboup was employed as Edible's Chief Operating Officer between 2019 and 2022. (1st Am. Compl. ¶ 16, 19–30, 60–63, 84–88.) The facts are highly disputed.

According to Edible, Mboup deposited over $1.2 million in "rebate checks" made payable to Edible (or one of Edible's affiliates) into EAI's bank account, which he exclusively controlled. (Pl.'s Statement of Undisputed Material Facts ¶ 5.) EAI is not affiliated with Edible Arrangements, LLC. Mboup admits that he deposited these checks into his personal EAI bank account. (Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts ¶¶ 4–5.) He testified that his deposits were authorized by Tariq Farid, Edible's CEO, (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Sanctions, Ex. 1 ("Defs.' Mboup Dep. Excerpts A"), at 23:10–24 [Doc. 193-1]), and EAI testified that Farid and Mboup openly discussed the concept of creating the EAI entity, (Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts, Ex. 2 ("EAI Dep."), at 197:17–198:23 [Doc. 222-2]). According to Mboup's testimony, Mboup and Farid operated a separate company known as Halal Brands, LLC ("Halal Brands") that shuttered, so Farid authorized Mboup to take home vendor checks to provide the compensation that was otherwise expected through Halal Brands. (Defs.' Mot. for Summ. J., Ex. 17 ("Mboup Dep. Excerpts B"),[3] at 23:25–24:16

---

[3] Although the Defendants' Motion for Summary Judgment was later withdrawn, the Court will consider Exhibit 17 for the purposes of the present motions because they Defendants have effectively reincorporated it through later briefing and filings.

[Doc. 202-19].) Mboup testified that he and Farid would meet repeatedly to "go through the rebate check folder" and divvy up the checks between the two of them as "compensation." (Defs.' Mboup Dep. Excerpts A, at 23:16–24.)

Separately, Edible alleges that Mboup negotiated a contract between "Edible Arrangements International, Inc." ("EAII") and a media company known as Active Media in order to siphon additional funds into his personal EAI bank account. (1st Am. Compl. ¶ 64–67.) The media-purchasing contract, which was executed by Active Media and EAII, provided that Active Media would make upfront and reconciliation payments to EAII in exchange for EAII's commitment to purchase media from Active Media. (*See* Pl.'s Statement of Undisputed Material Facts ¶ 7.) While Edible (not EAII) paid Active Media for several media contracts under the terms of the purchase agreement, Mboup deposited the upfront and reconciliation payments into his personal E.A. International LLC bank account. (1st Am. Compl. ¶¶ 73–78.) According to Edible, "Edible Arrangements International, Inc." is a fictitious company and not affiliated with Edible. (1st Am. Compl. ¶ 67. *But see* Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts ¶ 6 (citing checks deposited by Edible but made out to EAII as evidence that EAII is equivalent to Edible).) Rick Forshay of Active Media testified that Active Media believed the contracts and business were solely between it and Edible. (Pl.'s Mot. for Summ. J., Ex. 2, at 38:17–40:22, 105:19–23 [Doc. 195-4].) The Defendants assert that Active's payments to EAII (Mboup) served as consideration for Mboup's work

3

facilitating the relationship between Edible and Active and that Farid endorsed this setup. (*See* Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts ¶ 24 (citing Compl. ¶¶ 18, 60); Defs.' Mboup Dep. Excerpts B, at 23:25–24:16.) But they admit that "Mboup never told Active Media that the payments were going to an entity that he controlled that was separated from his employer." (*Id.* ¶ 28; *see also id.* ¶ 29 (admitting that EAI had no relationship with Active).)

In its First Amended Complaint, Edible alleges the following claims: (1) breach of contract against Mboup, (2) breach of fiduciary duties against Mboup, (3) aiding and abetting breach of fiduciary duties against EAI, (4) theft by taking and theft by deception against both Defendants, (5) money had and received against both Defendants, (6) fraud and fraudulent concealment against both Defendants, (7) civil conspiracy against both Defendants, and (8) attorney's fees and expenses against all Defendants.[4]

The Defendants filed counterclaims in response. The thrust of the Defendants' counterclaims is that Edible's suit breaches the offer letter that Mboup signed upon being hired at Edible. The offer letter includes the following paragraph regarding "Competitive Ventures":

> During your employment with Edible Arrangements, you may engage in or possess an interest in other business ventures, and Edible Arrangements shall have no rights by virtue of your employment to any of the income or profits derived therefrom,

---

[4] "All Defendants" refers to Mboup, EAI, and unknown "Defendant XYZ Corporations" that were allegedly implicated in the fraudulent scheme.

4

and the pursuit of any such venture, even if competitive with our business of the Company, shall not be deemed wrongful or improper. You shall not be obligated to disclose or present any particular opportunity to Edible Arrangements even if that opportunity is of a character that, if disclosed or presented to us, could be taken by us. You shall not, however, be permitted to use trade secrets or confidential or proprietary information of Edible Arrangements for any such independent business venture or opportunity.

(Pl.'s Statement of Undisputed Material Facts ¶ 13; Defs.' Countercls., Ex. A ("Offer Letter"),[5] at 2–3 [Doc. 15-1].) The Defendants allege that Edible's suit seeks to deprive Mboup of funds obtained by the business ventures authorized in the offer letter and by Farid. (Countercls. ¶¶ 22, 29 [Doc. 132].)

Edible has filed three motions. First, it seeks sanctions against the Defendants in the form of striking their Amended Answer to Edible's First Amended Complaint and paying attorney's fees, pursuant to Rules 37(d) and 37(c)(1) and the Court's inherent authority. Second, it moves to strike part of the Defendants' counterclaims as "immaterial, impertinent, or scandalous," pursuant to Rule 12(f). Third, it moves for summary judgment as to the Defendants counterclaims.

---

[5] The Defendants attached this exhibit to their counterclaims [Doc. 15] against Edible's Initial Complaint, then reincorporated those counterclaims into their counterclaims against Edible's First Amended Complaint [Doc. 132].

## II.    Legal Standard

### A. Motion for Sanctions

Edible invokes three types of authority through which the Court could impose sanctions on the Defendants: (1) Rule 37(d); (2) Rule 37(c); and (3) the Court's "inherent" authority.

Under Rule 37(d), a party may move for sanctions if another party "fails to serve its answers, objections, or written response" to an interrogatory. Fed. R. Civ. P. 37(d)(1)(A)(ii). But that motion "must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B). The available sanctions under Rule 37 include those available under Rule 37(b)(2)(A)(i)–(vi) as well as the payment of attorney's fees "caused by the failure, unless the failure was substantially justified." Fed. R. Civ. P. 37(d)(3). Rule 37(b)(2)(A)(i)–(vi) permits the following sanctions:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party.

Fed. R. Civ. P. 37(b)(2)(A)(i)–(v).

Under Rule 37(c), a party may move for sanctions if another party "fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). As relevant here, Rule 26(e) requires parties to "supplement or correct" their responses to interrogatories or requests for production "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, *and* if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). The Court may prohibit a party that violates Rule 26(e) from "us[ing] that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). It may also order the payment of attorney's fees "caused by the failure," "inform the jury of the party's failure," or impose sanctions available under Rule 37(b)(2)(A)(i)–(vi).

Lastly, the Court possesses "inherent power . . . to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (citation omitted). Under this power, the Court may "sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Id.* (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013)); *see also id.* ("The key to unlocking a court's inherent power is a finding of bad

7

faith."). The Eleventh Circuit cautions, however, that this power "must be exercised with restraint and discretion." *Id.*

### B. Motion to Strike

Under Rule 12(f), the Court may on its own or by motion strike all or a portion of a "pleading" that contains "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally "disfavored," and courts regularly deny such "drastic" measures "unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Allen v. Life Ins. Co. of N.A.*, 267 F.R.D. 407, 410 (N.D. Ga. 2009) (citation omitted); *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699 (S.D. Fla. 2013) (citation omitted).

### C. Motion for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.    Discussion

As explained below, the Court grants in part and denies in part Edible's Motion for Sanctions. It is granted as to the request to strike the Defendants' Amended Answer to Edible's First Amended Complaint and denied as to all other relief requested therein. The Court additionally grants Edible's Motion to Strike and grants Motion for Summary Judgment on all counts (Counts I–III) in the Defendants' counterclaims.

### A. Motion for Sanctions

Edible asks this Court to strike the Defendants' Answer pursuant to Rule 37(d), Rule 37(c), or the Court's inherent authority. Its request focuses on two accusations: (1) the Defendants knowingly lied in their discovery responses about whether Mboup had "received" checks from vendors other than Active Media and whether they possessed documents related to the same, and (2) Mboup lied to Edible and under oath about graduating from Lehigh University. Edible argues that both falsehoods were material because it was aware of only the vendor checks from Active Media and no other vendor at the time of the Initial Complaint and because Mboup's lie about his education constitutes part of his scheme to get hired at Edible and siphon its funds.

Edible claims that the Defendants' false discovery responses extend to both interrogatories and requests for production. In Interrogatory No. 5, Edible

asked the Defendants to "[i]dentify each and every payment that [the Defendants] received: (a) from Active Media; (b) from any Edible vendor; or (c) related to any Edible contract." (Pl.'s Mot. for Sanctions, Ex. 1 ("Mboup Discovery Response"), at 6 [Doc. 188-1]; Pl.'s Mot. for Sanctions, Ex. 2 ("EAI Discovery Response"), at 7 [Doc. 188-2].) Mboup responded that "he [was] not aware of any payments directed to him as described in this request."[6] (Mboup Discovery Response, at 7.) EAI responded that "the only payments of which it is aware that would be responsive to this request were identified in Plaintiff's complaint and the exhibits thereto." (EAI Discovery Response, at 7.)

In Request for Production No. 8, Edible asked Mboup to produce "[a]ll Documents referring or relating to any payments [the Defendants] received: (a) from Active Media; (b) from any other Edible vendor; or (c) related to any Edible contract." (Mboup's Discovery Response, at 13.) Mboup responded by "incorporat[ing] and reassert[ing] his objections and response to Interrogatory No. 5." (*Id.*) Additionally, in Request for Production No. 9 for Mboup and No. 8 for EAI, Edible asked the Defendants to produce "[a]ll Documents referring to or relating to the information in [their] responses to any of Edible's Interrogatory Requests." (Mboup Discovery Response, at 13; EAI Discovery

---

[6] The Court notes that Mboup's response, as well as EAI's, was subject to objections, including that (1) the Defendants "d[id] not have knowledge of all 'Edible vendors' or 'Edible contracts,' both of which are vague and ambiguous phrases," and (2) the "responsive information is in Plaintiff's possession and custody." (Mboup's Interrogatory Response, at 7; EAI's Interrogatory Response, at 7.)

Response, at 13.) In response and subject to prior objections, the Defendants affirmed that they would produce relevant non-privileged documents. (Mboup Discovery Response, at 13; EAI Discovery Response, at 13.)

Edible argues the Defendants' responses were "blatant" lies, as Mboup later clarified in his deposition that he "was absolutely aware" that EAI "received over a million dollars of payments from multiple other Edible vendors [besides Active Media] at the time" of the discovery responses. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Sanctions, at 6.) Edible further contends that the Defendants responded in bad faith to the discovery requests, intending to mislead Edible into believing that Mboup only deposited checks from Active Media. Mboup and EAI failed to correct their responses at any point in the twenty-month period between providing their responses and Edible's later discovery of checks from multiple other vendors totaling more than $1 million. Edible claims it only became aware of the other vendor checks after being notified of a separate criminal investigation and subsequently serving a third-party subpoena on PNC Bank. (Reply Br. in Supp. of Pl.'s Mot. for Sanctions, at 2, 7 [Doc. 215].) Edible further states that the Defendants' falsehoods "caus[ed] undue delay and disruption to this litigation" and "wasted time and expense," as the revelation prompted Edible to "conduct an internal investigation, file an amended complaint, serve supplemental discovery, and subpoena third parties." (*Id.* at 7.) The estimate of Mboup's unlawful deposits increased from $2.5 million in the Initial Complaint to $3.9 million in the First

Amended Complaint.

The Defendants offer two primary responses. First, they explain that they did not lie in their discovery responses, quibbling with the meaning of "received" in Edible's requests. Mboup testified that he did not, strictly speaking, "receive[ ]" any checks from Edible's vendors; rather, he "received" checks directly from Edible's CEO, Tariq Farid, which were made out from Edible's vendors. (Defs.' Mboup Dep. Excerpts A, at 21:24–22:11 ("All the rebate checks [he] received were *from Tariq Farid himself*, not from any Edible vendor." (emphasis added)).) Because the discovery requests asked the Defendants about payments "received" from "any Edible vendor," the Defendants suggest that Mboup's discovery responses were not false—or, at most, an "inconsistency" rather than "false testimony". (*See* Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Sanctions, at 5–7 [Doc. 193].) Second, the Defendants contend that Edible was not prejudiced or otherwise harmed because it learned of all the vendor payments during the discovery period and before Mboup's deposition such that the company "was [ ] able to examine Defendant Mboup at length about any and all of those checks, and that PNC account." (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Sanctions, at 6–7 (citation omitted).)

In addition to the Defendants' supposedly false responses to written discovery, Edible claims that Mboup also lied under oath about his educational background. Mboup testified in his deposition that he graduated from Lehigh University with an undergraduate degree in statistics and finance. (Pl.'s Mot.

for Summ. J., Ex. 4 ("Pl.'s Mboup Dep. Excerpts"), at 11:21–12:16 [Doc. 195-6].)

A third-party subpoena to Lehigh University revealed that he fabricated his educational background, as the university has no record of Mboup's attendance. (*See generally* Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Discovery, Ex. 5 [Doc. 156-5].) Edible explains that this falsehood is material because Mboup repeated this same lie while applying for a position with Edible, becoming a deliberate and "first step in furtherance of his scheme to steal money from Edible." (Pl.'s Mot. for Sanctions, at 8 [Doc. 188].) Mboup's Lehigh credentials are represented in other places such as in a 2022 article featuring him. (*See* Pl.'s Mot. for Sanctions, Ex. 6, at 3 [Doc. 188-6].) The Defendants respond that Mboup's educational background is immaterial, the content of the deposition testimony is not an allowable justification for Rule 37(c) sanctions, and Edible has cured the issue through its subsequent subpoena. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Sanctions, at 10–11.)

Edible requests the drastic remedy of striking the Defendants' Amended Answer to in its entirety. Along with its request to strike, Edible also requests reasonable expenses and attorney's fees from the Defendants. (Pl.'s Mot. for Sanctions, at 2.) As explained below, the Court holds that sanctions are appropriate under Rule 37(d) and the Court's inherent authority.

### i. Rule 37(d)

As an initial matter, the Court notes that sanctions under Rule 37(d) are unavailable because the certification required for such sanctions is deficient.

In making its sanctions motion under Rule 37(d), Edible must certify that it "attempted to confer with" the Defendants "in good faith" to "obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B). The present certification attests that Edible's counsel attempted to confer in good faith with defense counsel between February and July of this year to "resolve the dispute" but that "such attempts . . . were unsuccessful." (Pl.'s Mot. for Sanctions, at 21.) However, both Edible and the Defendants appear to agree that Edible did not in fact confer about the Defendants' failure to identify all discoverable vendor checks. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Sanctions, at 15–16; *see* Reply Br. in Supp. of Pl.'s Mot. for Sanctions, at 14–20 ("[T]here was no formal conference.").) Conferral need not take the form of an in-person conversation or call, but Edible's counsel apparently did not even reach out over email or in any other form to the Defendants' counsel; rather it relied exclusively on the formal tools of discovery. Although Edible felt that Mboup was being non-responsive and unhelpful to its supplemental discovery requests, (*see* Reply Br. in Supp. of Pl.'s Mot. for Sanctions, at 15 & n.53), that is not equivalent to conferral between counsel.

The Court declines to read Rule 37(d)'s conferral requirement as optional. Edible relies on *Chemtall, Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390 (S.D. Ga. 1998), to argue that the conferral requirement is not required where "utter futility has been demonstrated." *Id.* at 1411. But Rule 37(d)

unequivocally requires a certification that conferral efforts have been made.[7] Regardless, Edible has failed to show that conferral would be utterly futile, even if the Court were to accept as true that the Defendants lied in their discovery responses and about Mboup's educational background. *But see Chemtall*, 992. F. Supp. at 1406–07, 1411 (finding conferral unnecessary where there were at least ten documented instances of a defendant lying under oath, violating court orders, or otherwise attempting to obstruct the discovery process). Therefore, the failure to comply with the certification requirement is fatal to Edible's request for Rule 37(d) sanctions.

### ii. Rule 37(c) and the Court's Inherent Authority

Pursuant to Rule 37(c) and the Court's inherent authority, the Court finds that the only appropriate remedy in this case is to strike the Defendants' Amended Answer to Edible's First Amended Complaint. Striking a pleading in whole or in part is a sanction authorized by Rule 37(c) and within the Court's discretion following a finding of the Defendants' bad faith. *See* Fed. R. Civ. P. 37(c) (authorizing sanctions outlined in Rule 37(b)(2)(A)(iii)); *Bluestem*, 851 F.3d at 1223 (11th Cir. 2017) (quoting *Marx*, 568 U.S. at 382 (2013)).

As best the Court can tell, Mboup and EAI repeatedly and willfully misrepresented facts or misled Edible during the discovery process. As a result,

---

[7] The Court notes that Edible's motion technically does include a certification averring its conferral efforts as required by Rule 37(d), but Edible's later clarification in briefing that conferral did not occur is sufficient to render the certification null for sanctions purposes.

the Defendants successfully hid—for almost two years—at least $1.4 million in checks that were deposited in EAI's bank account. These checks are at the center of Edible's lawsuit. These circumstances are not a case of "simple negligence, misunderstanding, or inability to comply" but rather willful conduct and bad faith. *See Douse v. Delta Air Lines Inc.*, 2023 WL 6636194, at *5 (11th Cir. Oct. 12, 2023) (quoting *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993)) (explaining that discovery violations based on "simple negligence, misunderstanding, or inability to comply" are not grounds for extreme sanctions). The Defendants have failed to provide any reasonable or credible justification for hiding the principal evidence in this case; their explanation that Mboup physically "received" the checks from Farid and not Edible's vendors falls apart in light of the fact that the key evidence in this case is the checks made out from Edible's vendors that Mboup deposited in his personal EAI account. Had Edible not discovered these additional checks through a separate criminal investigation brought to its attention, there is no certainty that the Defendants would have corrected their prior discovery responses. This conduct has prejudiced Edible. Edible has since amended its Complaint to increase its damages amount by approximately $1.4 million, served additional discovery requests to the Defendants, conducted an internal investigation, and subpoenaed third parties.

Of less significance but also relevant is Mboup's false testimony under oath regarding his educational credentials. The deliberateness of this lie is

evidenced by the fact that Mboup repeated the same lie to Edible as part of his initial job application and in other places. The Defendants do not deny the lie; rather, they primarily argue that the falsehood is immaterial and not sanctionable. While a falsehood in a deposition is not a justification for sanctions under Rule 37(c), the Court takes this falsehood into account in its broader finding of Mboup's pattern of bad faith behavior, which is subject to the Court's inherent authority to manage the orderly disposition of cases.

Striking a pleading is a drastic but justified remedy in this case. *See Immuno Vital, Inc. v. Telemundo Grp., Inc.*, 203 F.R.D. 561, 573 (S.D. Fla. 2001) (citing *Malautea*, 987 F.2d at 1542) (noting that striking a pleading is a sanction of "last resort" that is "appropriate only where lesser sanctions are not adequate"). Taking into consideration the multiple instances of bad faith conduct, the Court is not persuaded that the importance of integrity in the discovery process has been impressed upon the Defendants, nor is it persuaded that lesser sanctions would deter them from future misconduct. *See Forsberg v. Pefanis*, 261 F.R.D. 694, 702 (N.D. Ga. 2009) (striking an answer in response to fabricated evidence); *BluestarExpo, Inc. v. Enis*, 2022 WL 2341168, at *9–12 (S.D. Fla. May 16, 2022), *report and recommendation adopted*, 2022 WL 4017421 (S.D. Fla. Sept. 2, 2022) (striking a defendant's pleadings following discovery violations and failure to comply with discovery orders). For these reasons, the Court takes the drastic remedy of striking the Defendants' Amended Answer. The Court declines to impose the additional sanction of

requiring the Defendants to pay Edible's expenses and attorney's fees. Thus, the Plaintiff's Motion for Sanctions [Doc. 188] is granted in part and denied in part.

### B. Motion to Strike

Edible asks this Court to strike ¶ 15 of Mboup and EIA's counterclaims as "immaterial, impertinent, or scandalous matter," pursuant to Rule 12(f)(2). That paragraph alleges the following:

> Mr. Farid expressed to Mr. Mboup his belief that Edible's employment of gay individuals was hurting the company and his desire to terminate gay employees. Indeed, upon information and belief, gay individuals were terminated or pressured to leave Edible. Mr. Farid also expressed a distrust of Black women, and the only Black female executive at Edible ultimately left the company.

(Defs. Countercls. ¶ 15.) According to Edible, "allegations that [Farid] is homophobic or racist [ ] have nothing to do with the claims and counterclaims in this case," which generally concern breach of contract and fraud claims. (Pl.'s Mot. to Strike, at 1.) Edible further contends that these allegations are "an improper attempt to distract from Defendants' stealing millions of dollars from Plaintiff and to gain some sort of extrajudicial leverage over Plaintiff." (*Id.*)

The Defendants respond that Edible's motion is untimely and that, in any case, ¶ 15 contains relevant and nonprejudicial allegations. Regarding timeliness, the Defendants explain that Edible filed its Motion to Strike 115 days after being served the Defendants' Amended Answer with their reincorporated counterclaims and 110 days after serving its Answer to the

Defendants' reincorporated counterclaims. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Sanctions, at 8.) Rule 12(f)(2) requires movants to file their motions to strike "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). Regarding ¶ 15 itself, the Defendants argue that the paragraph "provide[s] context for the contentious, toxic work environment that was fostered by Farid" and "explain[s] why Mboup left Edible's employ, rather than the inference that Mboup left to conceal anything." (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Sanctions, at 9.)

As an initial matter, the Court agrees that Edible's motion is untimely under Rule 12(f)(2).[8] However, having considered the allegations in ¶ 15 and pursuant to Rule 12(f)(1), the Court sua sponte strikes Farid's homophobic and racist allegations in that paragraph as irrelevant to the present claims, likely to confuse the jury, and prejudicial. Although it is possible that these allegations may help Mboup show that he left Edible for reasons independent of the alleged fraudulent scheme, his justification for leaving is wholly irrelevant to his counterclaims. The counterclaims concern Edible's supposed breach of Mboup's employment contract (Count I) and breach of the covenant of good faith and fair dealing (Count II) by "attempting to prevent [him] from

---

[8] The Court notes that Edible justifies its delay by explaining that it was not evident until discovery had closed that the ¶ 15 allegations "had nothing to do with the claims and defenses in this case." (Reply Br. in Supp. of Pl.'s Mot. for Sanctions, at 1.)

engaging in certain business ventures and opportunities." (Defs.' Ans. & Countercls. ¶¶ 22, 29.) Mboup's alleged conversations with Farid regarding hiring gay or Black employees do not make those claims any more or less likely to succeed. *See, e.g.*, *Homecare CRM, LLC v. Adam Group, Inc. of Middle Tenn.*, 2012 WL 12847231, at *2 (N.D. Ga. Nov. 8, 2012) (striking paragraphs in a counterclaim that described a party's prior forgery and fraud because they "d[id] not have any possible relation or logical connection to [the defendant's] answer or counterclaim"). Even accepting that Mboup's justification for leaving Edible is relevant to whether he committed the fraud alleged by Edible, the Court finds that the likelihood that the allegations in ¶ 15 would confuse the jury and prejudice the Defendants outweighs that relevance. Farid's alleged comments are homophobic and racist, and allowing such allegations would likely result in distracting testimony and argument on the moral character of Edible's CEO. Therefore, the Court grants Edible's Motion to Strike ¶ 15 of the Defendants' counterclaims [Doc. 191].

### C. Motion for Summary Judgment

Edible moves for summary judgment on the Defendants' counterclaims for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), and tortious interference with business relations (Count III). As an initial matter, Edible is entitled to summary judgment on Count III. The Court previously dismissed that count for failure to state a claim for relief [Doc. 48], though the Defendants nonetheless incorporated it

20

into their answer and counterclaims [Doc. 132] to Edible's First Amended Complaint.

The Court addresses the remaining two counts (Counts I–II) below. Edible advances two primary arguments: (1) Edible could not have breached the ventures clause because all obligations under the agreement terminated when Mboup left Edible and because Mboup's actions constituted "theft" rather than protected ventures. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 7–14 [Doc. 195-1].); (2) the Defendants have not offered any proof of damages, (*id.* at 15–16). (Br. in Supp. of Pl.'s Mot. for Summ. J., at 7–14.) The Court ultimately holds that Edible is entitled to judgment as a matter of law on both Counts I and II.

### i.   Employment Agreement

The Court holds that there is a genuine dispute of material fact as to the full scope of the employment agreement between Mboup and Edible such that a reasonable jury could find that Edible breached the agreement.

Edible is correct that, if the offer letter encompasses the full scope of the employment agreement, then all obligations under the offer letter terminated when Mboup's employment with Edible ended. The actions constituting Edible's alleged breach occurred after the termination of Mboup's employment and thus the offer letter. (*See* Pl.'s Mboup Dep. Excerpts A, at 268:15–269:1 (testifying that the alleged breaching actions occurred after his employment ended).) And the offer letter contains no survival clause. While some provisions

21

may survive the termination of a contract despite the absence of a survival clause (e.g., arbitration clause), the ventures clause is not of the kind that typically survives termination. *See, e.g., Peniel Solutions, LLC v. Weems Design Studio, Inc.*, 2018 WL 11343742, at *13 (N.D. Ga. Dec. 10, 2018) ("Normally, obligations expire when a contract terminates. But structural provisions—i.e., those pertaining to remedies and dispute resolution—generally survive the contract's termination." (citation omitted)). The ventures clause contains two components: It authorizes Mboup to "engage in . . . other business ventures" "[d]uring [his] employment with" Edible, and it prohibits Edible from having any "rights by virtue of [Mboup's] employment to any of the income or profits derived therefrom." (Offer Letter, at 2–3.) While the second component might be rendered somewhat meaningless if Mboup's right to noninterference turns on whether Mboup is still employed, that is the agreement that the parties executed on paper—one that lacks any survival clause.

However, the Court finds a genuine dispute of material fact as to whether the offer letter reflected the full scope of the employment agreement between Mboup and Edible—and if not, what those modified terms may have been. According to the Defendants, the offer letter was later modified by a common course of dealing, such that the full scope of the agreement between Mboup and Edible allowed for Mboup to compensate himself through Edible's vendor checks and Active Media contracts. (*See* Defs.' Resp. Br. in Opp'n to

Pl.'s Mot. for Summ. J., at 17–18.) The evidence for this course of dealing includes testimony of Farid's awareness of EAI, Farid's commitment to finding Mboup additional streams of income when Halal Brands failed, the routine and supposedly transparent distribution of Edible's vendor checks between Farid and Mboup, and discussions between Farid and Mboup regarding obtaining compensation through the Active Media contract. (*See, e.g.*, Defs.' Mboup Dep. Excerpts, at 23:10–24; EAI Dep. at 197:17–198:23; *see also* Stanley Aff. ¶ 8 [Doc. 193-3] (averring to the check distribution meetings).) This evidence stands in contrast to that presented by Edible, which presumes the offer letter reflects the only terms of the employment agreement and focuses on facts such as Active Media's testimony that it intended to undertake a business venture with only Edible and not Mboup (or EAI). (*See, e.g.*, Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 7–8 (citing various testimony).) Therefore, viewing all evidence in the light most favorable to the Defendants, the Court declines to grant summary judgment based on Edible's argument that the offer letter represented the full scope of the employment agreement.[9]

---

[9] The Court notes that Edible additionally argues that the Defendants have moved the goal post by now presenting evidence that the full scope of the employment agreement between the parties is not limited to the written offer letter. (*See* Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 9–10.) The Court agrees that the Defendants' counterclaims as pleaded focus on the offer letter, but they also reference the discussions with Farid and Farid's supposed endorsement of Mboup's activities. (*See* Countercls. ¶¶ 11–12.) This basis is sufficient for summary judgment purposes.

### ii.    Damages

Edible seeks dismissal of the counterclaims for failure to prove damages. The Defendants' counterclaims initially alleged damages in the form of "lost business" and "reputational harm." (Countercls. ¶ 25.) In May 2023, the Defendants stated in their initial disclosures they "have not yet computed damages but reserve the right to amend this response." (Initial Disclosures of Defs., at 6 [Doc. 26].) Edible points out in briefing that the Defendants have never amended their response or provided any documents to support the existence of damages. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 15.) In their response brief, the Defendants appear to have abandoned any notion of economic damages from lost business, but they maintain they have a viable claim for reputational harm. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 20.) They claim that non-economic damages such as reputational harm "can be measured and [ ] compensated at trial by the finder of fact." (*Id.* at 20.) And they assert that the reputational harm stems from Edible's statements "naming Mboup as a thief and accusing him of workplace theft" during this lawsuit and prior to it. (*Id.* at 22.)

The Court finds that Edible is entitled to judgment as a matter of law on Counts I and II for lack of damages. The Court declines to presume damage to the Defendants' reputation where the Defendants have failed to show evidence of—or even allege—any actions taken by Edible to cause such harm. Edible's act of alleging wrongdoing in a lawsuit is not a proper basis for

24

damages. And Edible now claims in briefing that the reputational harm stems from unspecified other statements made by Edible "naming Mboup as a thief." (*See* Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 22.) These supposed other statements are not only unspecified but also unrelated to the claims pleaded by the Defendants. As Edible points out, the Defendants have pleaded a breach of contract claim, not a defamation claim. (Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 13–14.) For these reasons, the Court grants Edible's Motion for Summary Judgment as to Counts I and II.

## IV.    Conclusion

For the reasons set forth above, the Court GRANTS in part and DENIES in part Plaintiff Edible Arrangements, LLC's Motion for Sanctions [Doc. 188]. The Court hereby strikes the Defendants' Amended Answer [Doc. 132] as an appropriate sanction in this case and denies all other relief requested in Edible's Motion for Sanctions. The Court further GRANTS Plaintiff Edible's Motion to Strike [Docs. 191]. Specifically, the Court strikes ¶ 15 of the Defendants' counterclaims, as initially alleged in Doc. 61 and later reincorporated in Doc. 136. Lastly, the Court GRANTS Edible's Motion for Summary Judgment [Doc. 195] as to the Defendants' counterclaims.

SO ORDERED, this ___13th___ day of March, 2026.

THOMAS W. THRASH, JR.
United States District Judge

25